Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| FINANCE OF AMERICA REVERSE, LLC<br><br>Parte Apelada<br><br>v.<br><br>FRANCIS ANA DEL CARMEN LEÓN COLLAZO T/C/C FRANCIS A. DEL CARMEN LEÓN COLLAZO T/C/C FRANCIS LEÓN COLLAZO; MARIO DEL PERPETUO SOCORRO ARRUE GONZÁLEZ T/C/C MARIO ARRUE GONZÁLEZ T/C/C MARIO ARRUE; Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA ENTRE AMBOS; OLYMPUS INVESTMENT CORPORATION; ESTADOS UNIDOS DE AMÉRICA<br><br>Parte Apelante | TA2025AP00324 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.: SJ2019CV02371<br><br>Sobre: Ejecución de Hipoteca |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero

Ortiz Flores, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de octubre de 2025.

Comparece ante nosotros Olympus Investment Corporation (Olympus; apelante) mediante el presente recurso de apelación y nos solicita que revoquemos la *Sentencia Parcial* emitida el 30 de abril de 2025, notificada el 6 de mayo de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante esta, el TPI determinó que Mario Del Perpetuo Socorro Arrue González y Francis Ana Del Carmen León Collazo (deudores obligacionales) incumplieron los términos y condiciones de la hipoteca revertida, al haber dejado de mantener la propiedad asegurada y transferir la totalidad de su título y dominio a Olympus. Ante ello, el TPI dictó *Sentencia en Rebeldía* y declaró *Ha Lugar* la reclamación contra los deudores obligacionales.

Adelantamos que, por los fundamentos que exponemos a continuación, confirmamos el dictamen apelado.

I

El 8 de marzo de 2019, Finance of America Reverse, LLC. (Finance of America; apelada) instó una *Demanda* sobre ejecución de hipoteca contra Mario Del Perpetuo Socorro Arrue González y Francis Ana Del Carmen León Collazo (deudores obligacionales); Olympus; y el gobierno de los Estados Unidos de América.[1] En apretada síntesis, adujo que el 13 de julio de 2014, los deudores obligacionales, en consideración de un préstamo hipotecario revertido, garantizado por la Administración Federal de Vivienda (FHA), suscribieron un pagaré hipotecario a favor de R.F. Mortgage And Investment Corporation, mediante el cual se le concedió un préstamo por la cantidad de $938,250.00 y a una tasa de interés anual de 5.060%. Asimismo, indicó que también se pactó el pago de una suma equivalente al 10% del principal original, para costas, gastos y honorarios de abogado en caso de reclamación por la vía judicial. Según adujo, los deudores obligacionales otorgaron la Escritura Núm. 144, mediante la cual se constituyó una hipoteca sobre el inmueble de su propiedad que se describe a continuación:

> **URBANA**: SOLAR RADICADO EN EL REPARTO SANTA MARÍA DEL BARRIO MONACILLOS DE RÍO PIEDRAS ,HOY CAPITAL DE PUERTO RICO, QUE SE MARCA CON EL NÚMERO 22 EN EL PLANO DE INSCRIPCIÓN CON UNA CABIDA SUPERFICIAL DE 1,799.28 METROS CUADRADOS, COLINDADO POR EL SURESTE, SU FRENTE, EN DISTANCIA DE 30.00 METROS, CON LA CALLE MARGINAL QUE LO SEPARA DE LA CARRETERA QUE CONDUCE DE RÍO PIEDRAS A CAGUAS; POR EL NORTE, SU FONDO, EN DISTANCIA DE 28.59 METROS, CON UNA FAJA DE TERRENO DEDICADA A SERVIDUMBRE DE PASO DE LÍNEA DE DISTRIBUCIÓN ELÉCTRICA DE LA AUTORIDAD DE LAS FUENTES FLUVIALES DE PUERTO RICO; POR EL NOROESTE, TAMBIÉN SU FONDO EN DISTANCIA DE 13.62 METROS, CON EL SOLAR NÚMERO 18 DE LA URBANIZACIÓN PROPIEDAD DEL REPARTO SANTA MARÍA, INC.; Y POR EL NORESTE, SU DERECHA ENTRANDO EN DISTANCIA DE 42.90 METROS, CON EL SOLAR NÚMERO 23 DE LA URBANIZACIÓN PROPIEDAD REPARTO SANTA MARÍA, INC.; POR EL SUROESTE, SU IZQUIERDA ENTRANDO EN

---

[1] SUMAC, Entrada 1 en SJ2019CV02371.

DISTANCIA DE 60.13 METROS, CON EL SOLAR NÚMERO 21 DE LA URBANIZACIÓN PROPIEDAD DE REPARTO SANTA MARÍA, INC. ENCLAVA CASA DE 2 NIVELES CON VALOR DE $750,000.00, SEGÚN LA ESCRITURA NÚMERO 19, OTORGADA EN SAN JUAN, PUERTO RICO, EL DÍA 2 DE NOVIEMBRE DE 2013, ANTE LA NOTARIO BRENDA MILAGROS ROSA DÍAZ, E INSCRITA AL FOLIO 3 DEL TOMO 1,001 DE MONACILLOS, INSCRIPCIÓN 13RA.

Planteó que era la entidad con derecho a exigir el cumplimiento de la obligación conferida mediante dicho pagare y escritura de hipoteca, por ser su tenedor. A su vez, adujo que los deudores obligacionales incurrieron en incumplimiento, conforme los términos y condiciones de la hipoteca, al dejar de mantener la propiedad asegurada y trasferir la totalidad del título de la propiedad a favor de Olympus, según consta en el Registro de la Propiedad. Por otra parte, alegó que, en o alrededor del 12 de junio de 2018, El Secretario del Departamento de Vivienda y Desarrollo Urbano (HUD) concedió la aprobación para que el préstamo fuera declarado vencido. Consecuentemente, arguyó que procedía el cobro de la totalidad de la deuda vencida a tenor con los convenios dispuestos en la escritura de hipoteca. Indicó que, al 28 de febrero de 2019, se adeudaba lo siguiente: $203,141.80 de principal; intereses al 5.060% hasta su completo pago; $93,825.00 para gastos, costas y honorarios de abogado. En virtud de lo anterior, solicitó el pago de la deuda antes mencionada; los intereses que se acumulen hasta el pago total de la deuda; el pago de costas, gastos y honorarios de abogado y cualquier otra suma que Finance of America haya pagado o pague a beneficio de los deudores obligacionales con el propósito de garantizar su crédito ejecutado. Además, solicitó la ejecución y venta en pública subasta del bien inmueble garantizado hipotecariamente y la concesión de cualquier remedio que tenga en derecho.

El 22 de octubre de 2019, Finance of America presentó una *Moción en Solicitud de Sentencia en Rebeldía* mediante la cual adujo que las partes fueron debidamente emplazadas y no presentaron alegación responsiva a la *Demanda* dentro del término correspondiente.[2] A tenor, solicitó que se

---

[2] SUMAC, Entrada 21 en SJ2019CV02371.

dieran por admitidas las alegaciones de la *Demanda* y se dictara sentencia en rebeldía. Solicitó, además, que se ordenara el pago de la suma adeudada y la ejecución de hipoteca.

Luego de varios tramites procesales, el 11 de agosto de 2022, el apelante presentó una *Moción para Reabrir el Caso, Enmendar la Demanda y para que se Expida Emplazamiento al Banco Popular de Puerto Rico*.[3] Además, acompañó la referida moción con una *Demanda Enmendada*, a los fines de incluir como demandado al Banco Popular.[4] En lo pertinente al caso ante nuestra consideración, en la *Demanda Enmendada*, adujo que el Banco Popular figura en el Registro de la Propiedad como acreedor hipotecario con rango de primera hipoteca. Sostuvo que la hipoteca del Banco Popular se inscribió, luego de que se otorgó la hipoteca objeto del pleito. Especificó que, surge mediante certificación registral, que la hipoteca del Banco Popular no figuraba inscrita ni pendiente de inscripción al momento de la transacción entre las partes. A tenor, reiteró lo solicitado en la *Demanda* y que se ordenara al Registrador a hacer la corrección en los libros a su cargo de la correspondiente inscripción de la hipoteca del Banco Popular e inscriba, con rango de primera hipoteca, la hipoteca objeto de la presente ejecución.

El 27 de septiembre de 2022, el apelante presentó una *Moción Solicitando Anotación de Rebeldía*. En esta, alegó que el Banco Popular solicitó término para contestar la *Demanda Enmendada*. No obstante, indicó que a los demás se les había expirado el término dispuesto para presentar una alegación responsiva a la *Demanda Enmendada*. Ante ello, solicitó que se le anotara la rebeldía a Olympus.

Posteriormente, el 21 de octubre de 2022, Olympus presentó su *Contestación a la Demanda Enmendada*.[5] Mediante esta, negó la mayoría de las alegaciones y presentó sus defensas afirmativas. Admitió su

---

[3] SUMAC, Entrada 40 en SJ2019CV02371.
[4] *Id.*
[5] SUMAC, Entrada 57 en SJ2019CV02371.

titularidad sobre la propiedad objeto de la controversia y las constancias del Registro de la Propiedad. Por otro lado, entre sus defensas afirmativas, esbozó que es un tercero registral y que en el caso KCD2015-0077 se dilucidaban asuntos cuyo resultado podía incidir en los reclamos del caso de epígrafe. Solicitó que se desestimara la *Demanda Enmendada* y la concesión de costas, gastos y honorarios de abogados.

Posteriormente, el 15 de agosto de 2023, Finance of America presentó una *Moción en Solicitud de Anotación de Rebeldía*.[6] Mediante esta, adujo que los deudores obligacionales fueron debidamente emplazados. Solicitó que, debido a que transcurrió el término para presentar alegación responsiva, se dictara sentencia en rebeldía en contra de estos.

El 30 de abril de 2025, notificada el 6 de mayo de 2025, el TPI emitió la *Sentencia Parcial* de la cual se recurre.[7] Mediante dicho dictamen, el TPI determinó que los deudores obligacionales incumplieron los términos y condiciones de la hipoteca revertida, al haber dejado de mantener la propiedad asegurada y transferir la totalidad de su título y dominio a Olympus. Ante ello, el TPI dictó *Sentencia en Rebeldía* y declaró *Ha Lugar* la reclamación contra los deudores obligacionales. Asimismo, dispuso que, ante la eventualidad de que los deudores obligacionales no hicieran efectivo el pago de las sumas adeudadas, dentro del término establecido por ley, se ordenaría la venta en pública subasta de la propiedad hipotecada.

Inconforme, el 20 de mayo de 2025, Olympus presentó una *Moción de Reconsideración*.[8] En esencia, alegó que existe un pleito paralelo, KCD2015-0077, en el cual se discute la validez y prelación de una hipoteca, previamente inscrita a favor del Banco Popular, sobre la misma propiedad objeto de la controversia ante nos. Arguyó que el resultado de dicho litigio

---

[6] SUMAC, Entrada 82 en SJ2019CV02371.
[7] SUMAC, Entrada 132 en SJ2019CV02371.
[8] SUMAC, Entrada 134 en SJ2019CV02371.

puede afectar la existencia de equidad ("equity") que había disponible en la finca al momento de la constitución del préstamo hipotecario revertido. Sostuvo que, en caso de que lo anterior se confirmara, ello podía viciar la garantía inmobiliaria del préstamo, por incumplimiento con los requisitos federales del programa Home Equity Conversion Mortgage (HECM). Asimismo, adujo que la hipoteca de Finance of America podía ser inválida, si se valida la hipoteca del Banco Popular en el caso KCD2015-0077 y no se considera esa deuda para determinar la equidad de la propiedad y el cumplimiento con los parámetros exigidos por la legislación federal. Por otro lado, indicó que no se había completado el descubrimiento de prueba. Sostuvo que la hipoteca que se pretende ejecutar fue constituida sin probarse que la misma cumpliera con los requisitos esenciales del reglamento federal aplicable. Por lo anteriormente expuesto, solicitó del TPI que reconsiderara la *Sentencia Parcial*, emitida el 30 de abril de 2025, y se dejara sin efecto la autorización de ejecución hipotecaria. Asimismo, solicitó que se suspendiera el procedimiento de ejecución de hipoteca hasta que se completara el proceso de descubrimiento de prueba solicitado; se resolviera el pleito KCD2015-0077; y se dilucidara la validez sustantiva del gravamen, conforme a la normativa federal aplicable y al ordenamiento jurídico local.

En respuesta, el 9 de junio de 2025, Finance of America presentó *Oposición a "Solicitud de Reconsideración"*.[9] Mediante esta, adujo que el incumplimiento de requisitos reglamentarios del HUD no confiere derecho alguno a terceros no signatarios del préstamo asegurado. Por ello, adujo que Olympus, como tercero adquirente de la propiedad y parte no signataria del contrato hipotecario, carece de legitimación activa para invocar el incumplimiento de los requisitos del programa HECM. Alegó que la razón para declarar la aceleración y el vencimiento de la deuda es consecuencia de la venta de la propiedad inmueble por parte de los deudores obligacionales a Olympus. Explicó que Olympus fue incluido en

---

[9] SUMAC, Entrada 141 en SJ2019CV02371.

la reclamación por constar como titular inscrito en el registro. A tenor, solicitó que se declarara *No Ha Lugar* la *Moción de Reconsideración*, y en su consecuencia, se ordenara la ejecución de la hipoteca.

El 8 de agosto de 2025, el TPI emitió una *Resolución* mediante la cual declaró *No Ha Lugar* la *Moción de Reconsideración* de Olympus.[10] Cabe señalar que, a dicha *Resolución*, se incorporaron los fundamentos expuestos en la *Sentencia,* emitida el mismo día, mediante la cual el TPI dictó *Sentencia Sumaria* declarando *Ha Lugar* la *Demanda* y ordenando la ejecución de hipoteca, así como el pago de las cantidades adeudadas por los deudores obligacionales.[11]

Posteriormente, el 14 de agosto de 2025, notificada el 18 del mismo mes y año, el TPI emitió una *Sentencia Parcial (Enmendada Nunc Pro Tunc).*[12] Mediante esta, el TPI modificó las cantidades adeudadas establecidas en la *Sentencia Parcial*, emitida el 30 de abril de 2025. Dispuso que los deudores obligacionales adeudaban la suma principal de $365,642.23; los intereses sobre dicha suma al 5.060% hasta su completo pago; y la suma estipulada de $93,825.00 por concepto de gastos, costas y honorarios de abogado. Determinó que también adeudan cualquier suma adelantada por Finance of America por concepto de contribuciones sobre la propiedad, primas de seguro, tasaciones, inspecciones y otros gastos asociados con la protección de su interés o pagos en tal concepto, que podían hacerse necesarios o requeridos durante la pendencia de la acción, así como cualquier otra suma que se haga en virtud de la escritura de hipoteca. Expresó que dichas cantidades continúan acumulándose hasta su total y completo pago.

Inconforme, el 8 de septiembre de 2025, el apelante instó el recurso de epígrafe y señaló los siguientes errores:

> **Primer error**: Erró el TPI y abusó de su discreción al ordenar la ejecución de la hipoteca sin esperar la determinación del

---

[10] SUMAC, Entrada 147 en SJ2019CV02371.
[11] SUMAC, Entrada 148 en SJ2019CV02371.
[12] SUMAC, Entrada 152 en SJ2019CV02371.

pleito KCD2015-0077 sobre la prelación de la hipoteca de Banco Popular por $530,000.00, pues ese litigio define el "equity" mínimo requerido por HUD/FHA y condiciona la validez misma de la hipoteca revertida, de modo que el gravamen aquí ejecutado permanece jurídicamente controvertido.

**Segundo error**: Erró el TPI y abusó de su discreción al adjudicar sin permitir el descubrimiento de prueba solicitado por Olympus, incluyendo el pagaré original con endosos, contratos de cesión, informes de tasación, evidencia de cumplimiento con los límites de equidad y la autorización formal de HUD, privándole de examinar documentos esenciales para determinar la validez del gravamen y ejecutar una defensa plena y contradictoria, en contravención de las Reglas 23.1 y 36 de Procedimiento Civil y de la jurisprudencia que ordena una interpretación amplia y liberal del descubrimiento de prueba.

Por otro lado, el 7 de octubre de 2025, la apelada presentó *Alegato de la Apelada*, por lo que, con el beneficio de la comparecencia de ambas partes, procedemos a exponer el derecho aplicable.

**II**

**A**

La hipoteca es un derecho real de garantía que sujeta lo hipotecado, con independencia de su titular, a la facultad de eventualmente exigir su realización en valor, así como de tomar las medidas que resulten necesarias para salvaguardarlo, todo en aras de hacer valer la efectividad de una obligación dineraria principal. *R&G v. Registradora*, 162 DPR 602, 607 (2004). El derecho de hipoteca es de carácter accesorio, indivisible, de constitución registral y grava bienes inmuebles enajenables que permanecen en posesión de su propietario o titular. *Dist. Unidos Gas. v. Sucn. Declet Jiménez,* 196 DPR 96 (2016); *Soto Solá v. Registradora*, 189 DPR 653 (2013); L.R. Rivera, Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, 3ra Ed., San Juan, Jurídica Editores, 2012, pág. 485.

De igual modo, el Artículo 1014 del Código Civil de Puerto Rico, 31 LPRA sec. 8734, requiere que, como condición para la validez de la hipoteca, la misma debe constar inscrita en el Registro de la Propiedad. *Crespo Rodríguez v. González González,* 208 DPR 557,574; *SLG Haedo-López v. SLG Roldán-Rodríguez*, 203 DPR 324, 341-

342 (2019); *Dist. Unidos Gas v. Sucn. Declet Jiménez*, 96 DPR 96 (2016), págs. 110-111. Una vez la hipoteca queda inscrita, esta subsiste respecto a tercero, mientras no se cancele la inscripción en el Registro. *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*, Ley Núm. 210- 2015, según enmendada, 30 LPRA sec. 6120 (Ley del Registro de la Propiedad). Así, pues, toda hipoteca que esté debidamente constituida permite a su titular a perseguir el bien hipotecado hasta que se produzca su liquidación en caso de incumplirse la obligación que garantiza. Lo anterior opera con independencia de quién sea el propietario del bien, puesto que, al ser un derecho real oponible a terceros, la transmisión posterior del título de la cosa no afecta los derechos del acreedor. *Campos del Toro v. Ame. Transit Corp.*, 113 DPR 337 (1982).

Por otra parte, una de las formas en que el acreedor hipotecario puede hacer valer su crédito es mediante un procedimiento ordinario de ejecución de hipoteca. En lo concerniente, respecto al antes mencionado procedimiento, el trámite exige que se demande al titular inscrito del inmueble gravado. *Housing Inv. Corp. v. Registrador,* 110 DPR 490 (1980); Ley del Registro de la Propiedad, *supra*, sec. 6133. Por titular registral o inscrito se entiende que se hace referencia a "aquella persona a quien pertenece el derecho sobre el inmueble según el Registro de la Propiedad." *Pagán Rodríguez v. Registradora*, 177 DPR 522, 543 (2009). A tenor con ello, para identificar el titular registral del inmueble en litigio, el acreedor hipotecario debe investigar los datos registrales para así comenzar su ejecutoria. *Housing Inv. Corp. v. Registrador*, *supra*.

**B**

El préstamo hipotecario revertido ("reverse") o "Home Equity Conversion Mortgage" (HECM), está asegurado a través de un programa del Departamento de Vivienda y Desarrollo Urbano del gobierno federal (HUD). 12 USC sec. 1715z–20 (Ley orgánica), 24 CFR sec. 206.1 *et seq.* (Reglamento). Este tipo de programa no provee una hipoteca directamente, sino que sirve como garantizador a acreedores quienes

proveen préstamos descansando en las ganancias (equity) generadas por la propiedad a prestatarios sobre la edad de setenta y dos (62) años. 12 USC sec. 1715z–20(b)(1); 24 CFR sec. 206.33. El programa está diseñado para hacer este tipo de préstamos más accesible a personas de esta edad, protegiendo a su vez al prestamista del riesgo que representa la transacción. 12 USC sec. 1715z–20(a). Se trata de un producto complejo y altamente regulado por el gobierno federal.

Ahora bien, amerita añadir que, en el ámbito federal, se ha establecido que los reglamentos del HUD no están diseñados para ser invocados por los deudores hipotecarios en pleitos contra los acreedores. *Garey v. BWW Law Group, LLC*, Case No. 8:19-cv-03112-PWG (Md. 2021). Asimismo, en cuanto a las regulaciones del programa de seguro de la FHA, se ha dispuesto que:

> "[T]he regulations do not control directly the relationship between the mortgagor and mortgagee and may not be invoked by the mortgagor as a sword in an offensive cause of action against the mortgagee." *Garey v. BWW Law Group, LLC*, Case No. 8:19-cv-03112-PWG (Md. 2021).

Las regulaciones de HUD están dirigidas principalmente a regir la relación entre el prestamista de hipotecas inversas y HUD. Por ende, las regulaciones de HUD no otorgan al prestatario un derecho privado de acción, a menos que las regulaciones estén expresamente incorporadas en el acuerdo entre el prestamista y el prestatario. *Johnson v. World Alliance Fin. Corp.*, 830 F.3d 192, 196 (Jul 18, 2016). Véase, además, *Smith v. JPMorgan Chase Bank*, N.A., 519 Fed.Appx. 861, 864 (5th Cir. 2013).

**III**

El apelante plantea en su primer señalamiento de error que el TPI incidió al ordenar la ejecución de la hipoteca sin esperar la determinación del pleito KCD2015-0077, sobre la prelación de la hipoteca de Banco Popular. Arguye que dicho litigio define el "equity" mínimo requerido por HUD/FHA y condiciona la validez de la hipoteca revertida. Asimismo, como segundo y último señalamiento de error, el apelante aduce que el TPI erró

al adjudicar, sin permitir el descubrimiento de prueba solicitado, el cual incluye: el pagaré original con endosos; contratos de cesión; informes de tasación; evidencia de cumplimiento con los límites de equidad; y la autorización formal de HUD. Sostuvo que lo anterior, lo privó de examinar documentos esenciales para determinar la validez del gravamen y ejecutar una defensa. En esencia, en ambos errores, el apelante cuestiona la validez y exigibilidad de la hipoteca. Por estar relacionados entre sí, discutiremos los errores esbozados conjuntamente.

En el caso ante nuestra consideración, los deudores obligacionales, en consideración de un préstamo hipotecario revertido, garantizado por la FHA, suscribieron un pagaré hipotecario, mediante el cual se le concedió un préstamo por la cantidad de $938,250.00 y a una tasa de interés anual de 5.060%. Asimismo, se pactó el pago de una suma equivalente al 10% del principal original, para costas, gastos y honorarios de abogado en caso de reclamación por la vía judicial. A tenor, los deudores obligacionales otorgaron la Escritura Núm. 144, mediante la cual se constituyó una hipoteca sobre el inmueble de la propiedad objeto de la controversia ante nos. No obstante, estos incurrieron en incumplimiento con los términos y condiciones de la hipoteca al haber dejado de mantener la propiedad asegurada y transferir la totalidad de su título y dominio a Olympus.

Surge del expediente judicial, que la hipoteca de Finance of America consta inscrita en el Registro de la Propiedad. En consecuencia, esta se considera como debidamente constituida, según el Artículo 1014 del Código Civil de Puerto Rico, *supra*, el cual establece que, como condición para la validez de la hipoteca, la misma debe constar inscrita en el Registro de la Propiedad. *Crespo Rodríguez v. González González, supra*; *SLG Haedo-López v. SLG Roldán-Rodríguez, supra*; *Dist. Unidos Gas v. Sucn. Declet Jiménez, supra*. Una vez la hipoteca queda inscrita, esta subsiste respecto a tercero, mientras no se cancele la inscripción en el Registro. Ley del Registro de la Propiedad, *supra*, sec. 6120.

Ahora bien, la hipoteca es un derecho real de garantía que sujeta lo hipotecado, con independencia de su titular, a la facultad de eventualmente exigir su realización en valor, así como de tomar las medidas que resulten necesarias para salvaguardarlo, todo en aras de hacer valer la efectividad de una obligación dineraria principal. *R&G v. Registradora*, *supra*. Así, pues, Finance of America, como titular de dicha hipoteca, ostenta el derecho a perseguir el bien hipotecado hasta que se produzca su liquidación. En su consecuencia, ante el incumplimiento de los deudores obligacionales, Finance of America tiene derecho a reclamar las cantidades adeudadas por estos y exigir la ejecución de hipoteca, toda vez que se trata de una deuda vencida, líquida y exigible que aún no ha sido saldada hasta la fecha. En lo referente al trámite para ejecutar una hipoteca, se exige que se demande al titular inscrito del inmueble gravado. *Housing Inv. Corp. v. Registrador, supra*; 30 LPRA sec. 6133. En el caso ante nos, Olympus no es el deudor a quién se le concedió el préstamo revertido, no obstante, se incluyó en la *Demanda* ya que consta como titular de la propiedad objeto de la controversia. Ello, a su vez implica que, cuando Olympus adquirió el inmueble, expresamente reconoció y asumió la hipoteca de Finance of America, puesto que la inscripción hipotecaria constituye un derecho real con trascendencia registral que afecta a terceros desde el momento mismo de su inscripción.

Por otra parte, entendemos que el apelante, como tercero adquirente de la propiedad y parte no signataria del contrato hipotecario, carece de legitimación para alegar perjuicio directo por presuntas violaciones a la normativa del HUD. Según la normativa expuesta, un deudor no puede, y mucho menos un tercero adquirente, hacer valer un supuesto incumplimiento del HUD en una causa de acción afirmativa. Es decir, Olympus no puede alegar la nulidad del instrumento por razones que competen únicamente a HUD o al prestamista original. Dichas regulaciones no son razón para impedir la ejecución de la hipoteca inscrita, más aun, cuando Olympus admitió su titularidad sobre la propiedad objeto de la

controversia y las constancias del Registro de la Propiedad. En consecuencia, Olympus queda sujeto a los gravámenes previamente inscritos. Además, cabe señalar que, una cosa son las facultades de supervisión administrativa del HUD y otra los poderes jurisdiccionales los tribunales en un procedimiento de ejecución hipotecaria. Sobre el particular, la fiscalización del cumplimiento de los requisitos del programa HECM recae sobre el HUD ya que el préstamo hipotecario revertido es un producto complejo y altamente regulado por el gobierno federal. Por ello, no corresponde a los tribunales dilucidar los cuestionamientos sobre los requisitos exigidos por la regulación federal, en cuanto a los deudores y las instituciones financieras, para la otorgación del préstamo de hipoteca revertida. Son las agencias federales quienes tienen bajo su responsabilidad velar por el cumplimiento de los requisitos aprobados para este tipo de préstamo hipotecario y, por lo tanto, la revisión de los requisitos del programa HECM.

Examinado con detenimiento el recurso y la prueba documental ante nos, a nuestro juicio, el TPI no incidió en cuanto al errores señalados por el apelante. Entendemos que, contrario a lo alegado por el apelante, la hipoteca es válida y ejecutable, toda vez que consta inscrita en el registro y los deudores obligacionales incurrieron en incumplimiento del contrato de hipoteca. Asimismo, colegimos que no tiene méritos el argumento referente a que se debía esperar a la resolución del pleito KCD2015-0077, toda vez que Olympus carece de legitimación para alegar perjuicio directo por presuntas violaciones a la normativa del HUD. A su vez, determinamos que la prueba solicitada por Olympus no es pertinente a la validez de la hipoteca ya que sus argumentos mayormente se centran en los requisitos del HUD y el cumplimiento de estos por el prestamista. Ante el incumplimiento de los deudores obligacionales y la aprobación del secretario de HUD para que el préstamo fuera declarado vencido, procedía el cobro de la totalidad de la deuda vencida a tenor con los convenios dispuestos en la escritura de hipoteca.

Por todo lo anterior, resolvemos que el TPI no incurrió en los errores señalados por el apelante, por lo que procedió de forma correcta al declarar *Ha Lugar* la *Demanda* de ejecución de hipoteca por Finance of America. No habiéndose cometido los errores señalados por el apelante, procedemos a confirmar el dictamen apelado.

**IV**

Por los fundamentos antes expuestos, se confirma la *Sentencia Parcial* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones